[Crim. No. 7163.   Second Dist., Div. Three.   Aug. 4, 1960.]

THE PEOPLE, Respondent, v. BEN J. SANDERSON, Appellant.

Ben J. Sanderson, in pro. per., for Appellant.

No appearance for Respondent.

THE COURT.—Ben J. Sanderson was convicted by a jury of forging a fictitious name and of two offenses of issuing a check without sufficient funds. He admitted a previous felony conviction of three offenses of forgery. He appeals from the judgment and the denial of his motion for new trial. He was represented by a deputy public defender at the trial.

Upon application of appellant for appointment of counsel on the appeal, we examined the record. Having determined that appointment of an attorney would be of no benefit to appellant or to the court, we denied the request and notified appellant, extending his time to file a brief; no brief has been filed.

There was evidence of the following facts. Sanderson opened an account at the Furniture Mart Branch of the Citizens National Bank on September 16, 1959, depositing $25 in cash and a $278 check of James E. Slome payable to appellant and drawn on the Security First National Bank, Avalon and Vernon Branch; on the face of the check was written: "For a 1956 TV Console, 21 inch"; appellant was told not to draw checks against the account for six days; the

Slome check was returned unpaid; notice was sent appellant on the 18th. There was no account under the name of Slome at the Security Bank. On September 17th, appellant, using the name Fred D. Branch, presented a $150 check drawn on the Citizens Bank, signed Ben J. Sanderson and endorsed to Branch, to one Spitzer at the Bengal Discount Furniture Store; appellant signed a conditional sales contract for some furniture in the name of Branch; he made a $100 down payment and received $50 in cash; another man was with appellant. On September 21st, appellant went to the Smart Shop and presented his $72.76 check on the Citizens Bank as payment for some dresses for his wife; the saleslady took the check and appellant's driver's license upstairs and appellant left. Shortly thereafter Mrs. Sanderson came in and asked for the dresses, whereupon the police were called and she was arrested and taken to the police station. Appellant was arrested when he went to see Mrs. Sanderson. The $72.76 check was not presented to the bank for payment. The $150 check was presented to the bank and returned unpaid. A handwriting expert gave his opinion that appellant wrote the $72.76 check and endorsed the $150 check and the Slome check for $278, but he did not write the face of the latter; the latter checks were written by the same person.

Officer Robbins had several conversations with appellant after his arrest. Appellant admitted writing the $72.76 check but said he thought he had enough money in the Citizens Bank to cover it. He said he got the $278 check from one James E. Walker; when told the check was signed "Slome" he said he knew Slome as Walker and sold the latter a TV set for the $278; he gave the officer an old address of Walker's. Robbins checked out the address but got no information about Walker. In a subsequent conversation, appellant at first denied knowing anybody named Branch and disclaimed knowledge of the $150 check but later admitted using the name Fred D. Branch. He also admitted making out the conditional sales contract in the name of Branch but he denied signing, endorsing or cashing the $150 check.

Appellant testified at length: "Slome" was sometimes called "Walker"; the Citizens Bank official did not tell him not to write checks on the account for six days and he received no notice of dishonor of the Slome check; he had used the name Branch for many years to avoid salary attachments; Slome wrote and gave the $150 check at the furniture store; Slome was making a down payment on the furniture for him because

he owed appellant $100. On cross-examination, and over objections of his counsel, Sanderson was questioned about three other checks, two purportedly drawn by Sturd (Slome's brother-in-law) and one by Matthews, which appellant admitted endorsing and depositing in his account with the Bank of America, Alhambra Branch, in July and August, 1959. The Sturd checks were drawn on the California Bank and the Matthews check on the First Western Bank. Appellant testified that Sturd lived with Walker and that he got the checks in return for furniture he sold Sturd and Matthews and that he received no notice that the checks had been dishonored. He admitted a prior conviction of three offenses of forgery.

On rebuttal, the handwriting expert gave his opinion that the person who wrote the $278 and $150 checks also wrote the Sturd and Matthews checks. He was shown a letter sent to the district attorney saying "I, James Everett Walker, wrote those checks . . ." (the $150 and $72.76 checks) and gave his opinion that the letter was written by a woman and that the same person who wrote the letter wrote the $278 check, the $72.76 check (which appellant had not denied writing) and the $150 check. Robbins testified in rebuttal that during one of his conversations with appellant, the latter said that he had a hitchhiker with him at the furniture store. Bank officials of the California and First Western Bank testified that they had no records of accounts in the name of James Matthews or Henry L. Sturd; a Bank of America official testified that the Matthews and Sturd checks were returned dishonored and notice of dishonor was sent to appellant.

If appellant passed the $278 check with an intent to defraud, it was immaterial whether he wrote it. (*People* v. *McDaniel,* 157 Cal.App.2d 492 [321 P.2d 497].) The evidence relating to the Matthews and Sturd checks was admissible to show his intent (*People* v. *Robinson,* 102 Cal.App. 2d 800 [228 P.2d 583]) and was convincing proof of an intent to defraud. The jury could therefore infer that appellant wrote the $72.76 check and passed the check for $150 knowing they would not be made good by the fictitious Slome check. It is, of course, immaterial that the $72.76 check was not presented to the bank for payment. (*People* v. *Ekberg,* 94 Cal.App.2d 613 [211 P.2d 316].)

So far as shown, appellant had made no effort to contact Slome (Walker), Sturd or Matthews, if in fact such persons did exist. He evidently gave the police a fictitious address for Slome and Sturd. Since he had made no attempt to procure

their testimony it was to be presumed that he knew they would not furnish corroboration of his testimony that they had given him the various checks. In view of the impeachment of appellant's credibility by the admission of previous forgeries and the weakness of the defense offered, the only logical conclusion as to appellant's guilt was the one reached by the jury.

The judgment and order are affirmed.